## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN D. TAYLOR, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-4031 |
| | : | |
| COUNTY OF CHESTER, *et al.* | : | |
| Defendants. | : | |

## MEMORANDUM

**BARTLE III, J.**                                             **NOVEMBER 30, 2023**

Currently before the Court is an Amended Complaint filed by Plaintiff Shawn D. Taylor, a pretrial detainee currently incarcerated at the Chester County Prison ("CCP"),[1] pursuant to 42 U.S.C. § 1983 based on the conditions in which he is confined.  The Court will dismiss certain of Taylor's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and direct service of his claims that survive statutory screening.

## I.     FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Taylor's initial Complaint named as Defendants the County of Chester, Prime Care Medical, Inc., Warden Ronald Phillips, and Deputy Warden Roberts.  (Compl. at 2.)[2]  Taylor sought to impose municipal liability on the County of Chester and Prime Care, as well as supervisory liability on Warden Phillips and Deputy Warden Roberts, based on a host of conditions to which he was subjected since his arrival at CCP on July 14, 2023.  After granting Taylor leave to proceed *in forma pauperis*, the Court screened his Complaint pursuant to 28

---

[1] Although Taylor is convicted, he is classified as a pretrial detainee because he has not yet been sentenced.  *See Stevenson v. Carroll*, 495 F.3d 62, 67 (3d Cir. 2007).

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

U.S.C. § 1915(e)(2)(B)(ii).  The Court concluded that Taylor failed to state a claim against

Warden Phillips and Deputy Warden Roberts because his claims were "premised on generalized

allegations that are insufficient to support a plausible claim" rather than specific allegations of

personal involvement.  *See Taylor v. Cnty. of Chester*, No. 23-4031, 2023 WL 7329497, at \*8

(E.D. Pa. Nov. 6, 2023).  In contrast, Taylor had "alleged sufficient factual matter to proceed on

his claims against Chester County and Prime Care regarding . . . alleged policies that impacted

treatment of his [dental] cavities and asthma."  *Id.* at \*7.  In that regard, he "allege[d] that he was

denied medically appropriate dental treatment because of a blanket policy that limits treatment

for cavities to pulling teeth," *id.* at \*6, and that he "was denied prescribed medical treatment for a

serious medical need due to a blanket policy prohibiting use of inhalers for asthma," *id.* at 7.

Taylor's remaining allegations against Chester County and Prime Care, however, were

insufficient to state a plausible claim against those Defendants.  *Id.* at \*5.

Taylor was given the option of filing an amended complaint if he sought to amend the

defects in the dismissed claims.  *Id.* at \*8.  He returned with the pending Amended Complaint,

which names three of the same Defendants as his initial Complaint — the County of Chester,

Prime Care, and Deputy Warden George Roberts — and adds three new Defendants — Warden

Howard Holland, HSA Karen Murphy, and Dr. Martin Zarkoski, who is identified as a dentist.[3]

(*See* Am. Compl., ECF No. 7, at 3-6.)  The factual allegations in the Amended Complaint

essentially mirror those in Taylor's initial Complaint.

---

[3] The Amended Complaint, like the initial Complaint, sues the individual Defendants in their
individual and official capacities.  (Am. Compl. at 3-6.)  As with the initial Complaint, the Court
will dismiss all claims against the Defendants in their official capacity because those claims
duplicate the claims Taylor raises against those Defendants' employers.  *Taylor*, 2023 WL
7329497, at \*7 n. 10.

Taylor alleges that upon his admission to CCP on July 14, 2023, he was interviewed by an intake nurse, who noted in response to a question on the relevant paperwork regarding whether "the patient requires IMMEDIATE medical attention," that Taylor suffers from "Difficulty Breathing (has asthma)." (*Id.* at 14.)  Additionally, Taylor's prescriptions were transferred from the local pharmacy, including his prescriptions for Dulera and Albuterol, which he takes for asthma.  (*Id.*; *see id.* at 17 (stating that Taylor's physician prescribed Dulera "years ago")).)

Taylor was taken from a multiple holding cell to a cell in "Med Bay" that he describes as a "single cell converted into a multiple person cell," where he was held for approximately six days.  (*Id.* at 14-15.)  Taylor and his cell mate were told to "strip completely naked and put on what is commonly called the 'turtle suit'" even though the "turtle suit" was so worn that it would not stay on.  (*Id.*)  According to Taylor, his cell mate told him that "he was encouraged by the guards to take his frustrations out on [Taylor] for having to wear the turtle suit."  (*Id.* at 14.)  While in the Med Bay, Taylor was allegedly "denied access to preventative and corrective care for asthma" and was "not permitted to access [his] prescribed inhalers or any asthma treatment" even though his asthma was documented.  (*Id.* at 15.)  Taylor was told to take pills twice a day, which he did out of "fear," but the pills were not for asthma; Taylor describes them as "strong sedatives."  (*Id.* at 15, 16.)  His breathing worsened and he began having asthma attacks after three days, but he was nevertheless denied access to his inhalers when he asked for them.  (*Id.* at 15.)

Taylor further alleges that the "general treatment in Med Bay was horrific."  (*Id.*)  He overheard guards "constantly threatening" someone in the cell next to his, he claims that the water was turned off in his cell such that the toilet would not flush and he could not wash his

hands, and he was denied soap and a phone.  (*Id.*)  He also claims that the lights were constantly on, there was no natural light, he was not permitted outside, he was only "occasionally" allowed toilet paper, he was only allowed one shower during which others watched him, and he was required to sleep on the floor near the unflushed toilet.  (*Id.* at 15-16.)  Taylor further alleges that on July 19, 2023, his lawyers were prevented from seeing him because he was on "lock status" and he had to meet with them by phone instead.  (*Id.* at 16.)  According to Taylor, he was placed in the Med Bay "because of [his] charges" stating that "Chester County Prison, the Warden, the Deputy Warden, and Prime Care have a policy to subject inmates to torture based on their charges."  (*Id.*)

On July 20, 2023, Taylor was moved to R-Block.  (*Id.*)  Medication calls happened three times a day on the block, so Taylor "began asking for [his] asthma medications again" and "constantly" informed the nurse that he was prescribed Dulera for asthma.  (*Id.* at 16.)  Taylor claims he was denied the asthma medication and told by the nurse, "we do NOT provide preventative inhalers."  (*Id.* at 16-17.)  Nevertheless, it appears he was permitted to use a Dulera inhaler that his family dropped off for him upon intake, although it took two weeks for this to occur.  (*Id.*)  That inhaler, however, has now "been used up," leaving Taylor "with absolutely no preventative asthma inhaler or treatment."  (*Id.*)  Taylor alleges that he was told by a nurse to "hit the 'call button' in [his] cell if [he] needed rescue asthma treatment" but that he was ignored when he did so on July 27, 2023.  (*Id.* at 18.)  Taylor also alleges that he filed a grievance to obtain asthma treatment, and that Prime Care "ignore[d] [his] sick calls and refuse[d] to have [him] brought to medical due to 'no available escorts and severe understaffing.'"  (*Id.*)

Taylor further alleges that he was denied care for a toenail that fell off while he was housed on R-Block.  (*Id.*)  He saw a "nurse in medical" regarding the toenail but "was told [he]

won't be treated since Chester County Prison is only a temporary prison for inmates." (*Id.*)  The nurse also told Taylor that he could "get a pill to cure [the] toenail fungal infection if [he] left Chester County Prison." (*Id.*)  Taylor alleges that he has experienced pain from the toenail while wearing the "old and ripped shoes" provided to him. (*Id.*)

Additionally, Taylor claims to have been denied treatment for cavities.  He alleges that he began experiencing tooth pain and sensitivity while housed on R-Block and that he was told by the dentist that "the only option was to pull the tooth" because "there are no options at Chester County Prison for cavity fillings or a root canal even if that is the correct treatment." (*Id.* at 19.)  He was also denied a "teeth cleaning," allegedly for "non-medical reasons." (*Id.*)  As a result of his dental issues, Taylor alleges that he continues to experience pain and discomfort when eating and drinking.  (*Id.*)  He further notes that inmates are not permitted to have dental floss, are only given a small amount of toothpaste on intake, and are expected to buy dental and other hygiene products.  (*Id.* at 18-19.)

Finally, Taylor claims he was ignored for ten days despite submitting two medical slips for "stomach issues and chronic diarrhea." (*Id.* at 19.)  It appears he saw a nurse at some point, and the Amended Complaint implies that he was treated at that time, although the specifics are unclear.  (*Id.*)  Taylor "believe[s] [he] lost 10 pounds during this time." (*Id.*)

Taylor also describes events and conditions related to a lock down that occurred during his incarceration at CCP.  In that regard, Taylor alleges that, although R-Block is not a high security block, he was "on lock down" for approximately twelve days because another inmate escaped.  (*Id.*)  During that time, inmates were required to eat in their cells.  (*Id.*)  Taylor claims that being inside during this period impacted his mental health and breathing because the "air quality inside [his] cell can get really bad especially as an asthmatic." (*Id.*)  According to Taylor,

the escape was not surprising because the cell block doors do not always lock.  (*Id.* at 20.)  He notes that his cell door "routinely [had] locking issues" and that on one occasion, the issue could not be fixed by maintenance, and he was moved to a different cell for a period of time.  (*Id*.)  According to Taylor, the issues regarding the cell doors impacted his "safety from other prisoners in R-Block" because he has observed three "bloody fights" in less than three months.  (*Id.*)

Based on these allegations, Taylor asserts claims for violations of his First Amendment right to "freedom of speech," his Sixth Amendment right to access the courts, and his Fourteenth Amendment rights.  (*Id.* at 7.)  Taylor attributes those constitutional violations to numerous alleged policies and customs.  He contends that the Defendants:  used written and/or unwritten "customs" to harm him and "continue their active campaign of harassment while they are deliberately indifferent to [his] serious medical needs;" failed to act as a result of deliberate indifference to his serious medical, dental, and psychological needs; and refused to maintain proper staffing "to safely maintain security and also protect [him] from non-medical officials interference with all medical and non-medical escorts for attorney visits . . . ."  (*Id.* at 9-10.)  Taylor also alleges that there is an unwritten custom of "retaliation" against those who file grievances, appeals, and civil rights complaints in the form of a "campaign of harassment," (*id.* at 10), and that "Defendants" used "suicide level 1 procedures as a form of punishment due to [his] charges," (*id.* at 11-12).

As to medical care, Taylor contends that Prime Care — with the other Defendants' acquiescence — refuses, ignores, and delays treatment and procedures for non-medical reasons, *i.e.*, to save money even if treatment is less effective.  (*Id*. at 10-11.)  More specifically, Taylor contends that Prime Care and Chester County have refused to treat his asthma pursuant to a

"blanket policy" prohibiting ordering of asthma inhalers, and have also refused to provide him

"preventative or corrective care for all dental needs . . . for non-medical reasons." (*Id.*; *id.* at 17

(alleging that "Prime Care and the County of Chester remain deliberately indifferent to my

serious medical needs by refusing preventative care despite knowing I have asthma and require

Dulera to breathe" and that "Prime Care and the County of Chester have a blanket policy to not

provide preventative asthma inhalers or treatment.").)  Taylor further contends that "Defendants

ignore medical treatment for [de minimis] injuries like toe fungus and loss of toenails." (*Id.* at

11.)

As a result of these alleged constitutional violations, Taylor has experienced pain and

infection from cavities, difficulty breathing and severe asthma attacks, toe infection and loss of a

toenail, and "severe PTSD." (*Id.* at 22.)  He seeks damages and assorted injunctive relief. (*Id.* at

23-24.)

## II.    STANDARD OF REVIEW

Since Taylor is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the

Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to

state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to

dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d

236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275,

286 n.7 (3d Cir. 2021).  "At this early stage of the litigation,' '[the Court will] accept the facts

alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's]

favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to

state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting

*Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not

suffice.  *Iqbal*, 556 U.S. at 678.  As Taylor is proceeding *pro se*, the Court construes his

allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

*Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

Taylor asserts his constitutional claims pursuant to § 1983, the vehicle by which federal

constitutional claims may be brought in federal court.  "To state a claim under § 1983, a plaintiff

must allege the violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under color of state

law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Since Taylor's Amended Complaint is not

meaningfully different from his initial Complaint, the Court will again dismiss all claims except

for Taylor's claims against Chester County and Prime Care based on the alleged policies

prohibiting asthma inhalers and limiting dental care to the pulling of a tooth even if other care

would be medically warranted.

### A.    Claims Against Chester County and Prime Care

To plead a § 1983 claim against a municipality, such as Chester County, or a medical

contractor who provides medical services at a county prison, such as Prime Care, a plaintiff must

allege that the municipality's policy or custom caused the violation of his constitutional rights.

*See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v.*

*Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003).  "To satisfy the pleading

standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v.*

*City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* (quoting *Bielevicz*, 915 F.2d at 850). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers

know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* "Ordinarily, this requires a plaintiff to identify a pattern of similar constitutional violations by untrained employees that puts municipal decisionmakers on notice that a new program is necessary." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights — *i.e.*, to show that the need for more or different training was so obvious." *Id.* (internal quotations and alterations omitted). "Additionally, the identified deficiency in a [municipality's] training program must be closely related to the ultimate injury; or in other words, the deficiency in training must have actually caused the constitutional violation." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotations and alterations omitted). "[T]he causation inquiry focuses on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* at 226.

Many of Taylor's *Monell* claims fail for the same reasons they failed previously. Certain of the *Monell* claims in the Amended Complaint, like the initial Complaint, are predicated on Taylor's imprecise attempts to equate the conditions of which he complains with broad policies or customs of Chester County or Prime Care. Initially, Taylor may not predicate a *Monell* claim on "wholly conclusory and highly generalized assertions about unspecified patterns of misconduct," based on "no facts to support the existence of any policy, custom, or practice beyond those involving his own [experiences]." *Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir.

1995) (noting that "vague assertions" of a policy or custom are insufficient to impose liability).

Yet that is exactly what Taylor has done here regarding many of his claims, such as those based

on alleged campaigns of harassment and alleged policies to torture him based on his charges.

Further, generalized allegations of insufficient staffing or training fail to state a claim where, as

in this case, the Amended Complaint does not allege a specific pattern of constitutional

violations by untrained employees or other conduct from which deliberate indifference could be

inferred in a manner attributable to Chester County or Prime Care.  *See Brown v. Delaware Cnty.*

*Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague

and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an

adequate level of security staffing,' is insufficient to state a claim").

       Additionally, some of the customs to which Taylor alludes are unsupported by an

adequately pled constitutional violation.  *See Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d

227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place,

there can be no derivative municipal claim.") (citing *Los Angeles v. Heller*, 475 U.S. 796, 799

(1986) (if a municipal employee "inflicted no constitutional injury . . ., it is inconceivable that

[the municipality] could be liable")).  For instance, Taylor asserts that understaffing has led to a

violation of his Sixth Amendment right to counsel but has only described one occasion with

specificity when he could not visit with counsel, and on that occasion he was permitted to talk

with counsel by phone.  It is unclear how this incident unreasonably burdened Taylor's access to

counsel.  *See Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001) (explaining that pretrial

detainees must be afforded only a "reasonably opportunity" to receive the assistance of counsel).

He also purports to bring a claim for violation of his First Amendment right to freedom of

speech, (Am. Compl. at 7), but it is unclear upon what this claim is based.  Taylor also claims

that "Defendants" are using improper procedures "as a form of punishment due to [his] charges,"
(*id*. at 12), presumably as a result of his six-day placement in the Med Bay, (*id.* at 16), but he
never describes his charges and does not develop the factual basis for this bald allegation in a
manner that would state a plausible claim.  Taylor's generalized assertions of customs of
retaliation and "harassment" are similarly too vague to state a plausible claim, especially since he
again alleges no facts that would support an underlying constitutional violation as to these
claims.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (to state a plausible First
Amendment retaliation claim, a prisoner must allege that:  (1) he engaged in constitutionally
protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary
firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct
was "a substantial or motivating factor" for the adverse action); *DeWalt v. Carter*, 224 F.3d 607,
612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and
unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal
protection of the laws."); *see also Benson v. Delaware Cnty.*, No. 21-2854, 2022 WL 784475, at
*4 (E.D. Pa. Mar. 15, 2022) (dismissing *Monell* claim as "too conclusory" where inmate alleged
that, "as a part of [Defendants'] policy or custom, they 'encouraged' Correctional Officers at
George Hill 'to ignore grievances regarding pending assaults'" without sufficient factual
allegations about underlying incidents).  In sum, most of Taylor's allegations are akin to
"unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient to state a
plausible claim.  *Iqbal*, 556 U.S. at 678.

In contrast, Taylor has asserted two specific policies that he attributes to Chester County
and Prime Care that have directly impacted his specific medical needs.  First, he alleges that
Chester County and Prime Care approved and/or maintained a policy pursuant to which inmates

with dental issues would only be offered the option of pulling a tooth, regardless of the relevant standard of care.  (Am. Compl. at 11, 19.)  Second, Taylor alleges that Chester County and Prime Care essentially have a policy pursuant to which they do not permit inhalers for asthma as a matter of course, either on a preventative basis or as a matter of treatment.  (*Id*. at 11, 17.) Taylor alleges that as a result of these policies, he experienced deliberate indifference to his serious medical needs because he was not provided proper treatment for his cavities, and was denied access to his prescribed inhalers, despite having asthma attacks.

To state a Fourteenth Amendment claim based on the failure to provide medical care, a pretrial detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4]  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical

---

[4] "[T]he Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until after sentence and conviction."  *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (internal quotations omitted).  Since Taylor has not yet been sentenced, he is classified as a pretrial detainee whose claims are governed by the Due Process Clause of the Fourteenth Amendment. *Id.* at 166 (holding that the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees).

treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).

At this early stage of the litigation, Taylor has alleged serious medical needs in the form of his cavities, which caused him pain and sensitivity, and interfered with his ability to eat and drink, and in the form of his asthma, which affected his ability to breathe and for which he was prescribed treatment by a doctor.[5] *See Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005)

---

[5] To the extent Taylor alleges that he was not provided a "teeth cleaning" as a matter of preventative dental care, he has not described a serious medical need, so any constitutional claims based on this allegation are not plausible. *See Vaughn v. Cambria Cnty. Prison*, 709 F. App'x 152, 155 (3d Cir. 2017) (*per curiam*) ("dental health care claim" would be futile to amend); *see also Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (observing that "the lack of routine teeth cleaning" did not establish deliberate indifference to serious medical needs); *Rogers v. Cochran*, No. 20-185, 2021 WL 1877385, at *11 (N.D. Tex. Apr. 19, 2021), *report and recommendation adopted*, 2021 WL 1872584 (N.D. Tex. May 10, 2021) ("Rogers's desire for routine dental cleanings, without more, does not constitute a serious medical need." (citing cases)). It is also not clear that Taylor's toenail constituted a serious medical need, *see, e.g., Van De Gejachte v. McGowan*, No. 12-620, 2012 WL 2411860, at *10 (M.D. Pa. June 4, 2012), *report and recommendation adopted*, 2012 WL 2409675 (M.D. Pa. June 26, 2012) (collecting cases holding that minor toenail infections or injuries were not serious medical needs), but even assuming it did, he has not sufficiently tied the events related to treatment of his toenail to a specific policy or custom of Chester County or Prime Care. Taylor also has not sufficiently tied

(observing that several courts have "held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need" and citing cases); *Oke v. Biggins*, No. 18-214, 2019 WL 6702142, at *3 (W.D. Pa. Nov. 15, 2019), *report and recommendation adopted,* No. 18-214, 2019 WL 6701455 (W.D. Pa. Dec. 9, 2019) (plaintiff alleged a serious medical need when he described cavity that went untreated for at least 28 days, "caused him to experience severe pain in his face, jaw, and neck," and "interfered with his ability to eat, drink, and sleep"); *see also Lee v. Young*, 533 F.3d 505, 510 (7th Cir. 2008) ("As a general matter, asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." (internal quotations omitted)).  As to his cavities, Taylor alleges he was told by the dentist that the only option was to pull his tooth because, as a matter of policy, there are no options for fillings or a root canal "even if that is the correct treatment."  (Am. Compl. at 19.)  Liberally construing this allegation, the Court understands Taylor to allege that he was denied medically appropriate dental treatment because of a blanket policy that limits treatment for cavities to pulling teeth.  *See generally Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (deliberate indifference can be found where prison officials "prevent an inmate from receiving recommended treatment for serious medical needs").

Regarding his asthma, Taylor alleges that he was denied access to his physician-prescribed inhaler pursuant to a policy of Chester County and Prime Care that prevents inmates from using inhalers for asthma as a matter of prevention and/or treatment.  As a result, Taylor

---

allegations related to treatment of his "stomach issues and chronic diarrhea," (Am. Compl. at 19), or mental health care to a specific policy or custom in a manner sufficient to proceed against either Chester County or Prime Care.  *See generally Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (*per curiam*) (summarily affirming dismissal of *Monell* claims against prison medical contractor where plaintiff's "complaint stated that Wexford had an open practice, policy, or custom of deliberate indifference in order to save money" and "[h]is statement of facts merely repeated this").

alleges that his breathing worsened and he began suffering asthma attacks three days after his admission to CCP.  Nevertheless, he alleges that he still could not access an inhaler, perhaps with the exception of a period of time when it appears he was permitted to use the inhaler his family provided for him.  Taylor alleges that a nurse on R-Block informed him of the alleged policy, and was told that he was essentially limited to pressing the "call button" if he needed "rescue asthma treatment," but he claims that he did not receive treatment when he did so.[6]  (Am. Compl. at 17-18.)  He also claims that many of his requests for treatment were ignored and that he had difficulty accessing medical care.  At the screening stage, these allegations, construed liberally and read favorably to Taylor, are sufficient to raise an inference that Taylor was denied prescribed medical treatment for a serious medical need due to a blanket policy prohibiting use of inhalers for asthma.  *See Board*, 394 F.3d at 485 ("[R]efusing an asthma patient his inhaler when he is complaining of severe breathing problems could constitute a deprivation of a pretrial detainee's constitutional rights.").

In sum, the Court concludes that Taylor has alleged sufficient factual matter to proceed on his claims against Chester County and Prime Care regarding the alleged policies that impacted treatment of his cavities and asthma.  However, his other allegations against these

---

[6] *Contra Iseley v. Dragovich*, 90 F. App'x 577, 580 (3d Cir. 2004) (*per curiam*) (affirming grant of summary judgment where "the District Court held that Iseley's Eighth Amendment rights were not violated by the implementation of a policy that effectively prohibited him from keeping his asthma inhaler in his cell while he was housed in the RHU at SCI–Mahanoy.  At the time, no inmate in the RHU was allowed to self-medicate without the specific recommendation from a medical professional.  In the case of inhalers, in particular, the prison sought to prevent inmates from using them to hide contraband.  The District Court found that Iseley, a mild asthmatic in 1999, could obtain his inhaler from the officer on the pod simply by pushing the intercom button in his cell.").

Defendants are insufficient to state a plausible claim.  Accordingly, Taylor's remaining claims against these Defendants will be dismissed.

B.      **Claims Against Warden Holland, Deputy Warden Roberts, HSA Murphy, and Dr. Zarkoski**

In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  "Suits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

Taylor's claims against Warden Holland, Deputy Warden Roberts, HSA Murphy, and Dr. Zarkoski are premised on generalized allegations that are insufficient to support a plausible claim.  Taylor does not allege how these Defendants were personally involved in the events giving rise to his claims.  Rather, he generally contends that they failed to act to prevent the claimed violation of his constitutional rights in the numerous manners described in the Amended

17

Complaint.  (*See* Am. Compl. at 9.)  However, "[a]llegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  *Rode,* 845 F.2d at 1207.  The Amended Complaint fails to provide any factual specificity as to the individual Defendants' involvement in any of the constitutional violations alleged, their authorization or imposition of the policies in question, or their awareness of the relevant events, customs, or policies.[7]  Rather, it appears they have been named as Defendants because of their high-ranking positions at CCP, which is an insufficient basis upon which to hold them liable under § 1983.  *See Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("His conclusory statements that defendants Delbalso, Mason, and White 'created a policy or custom under which unconstitutional practices occurred' are insufficient to allege personal involvement." (quoting *Parkell v. Danberg*, 833 F.3d 313, 331 (3d Cir. 2016) ("To presume that [unconstitutional] practices arose from [an official's] policies merely because of his position . . . is to rely on respondeat superior."))); *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005) (explaining that "merely hypothesiz[ing] that [a defendant] may have been somehow involved simply because of his position as the head of the [relevant office]" does not support an inference of personal involvement).  Further, to the extent these Defendants were named because

---

[7] It is particularly unclear how Warden Phillips and Deputy Warden Roberts would be liable for the alleged constitutional violations predicated on lack of or inadequate medical care at CCP. *See Spruill*, 372 F.3d at 236 ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference."); *see also Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (*per curiam*) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving").  Although Dr. Zarkoski is identified as a dentist, the Amended Complaint does not indicate if he is the dentist who spoke with Taylor about his teeth and denied him treatment other than extraction of the diseased teeth.

they handled any of Taylor's grievances and/or were on the receiving end of some of his generalized complaints, (*see* Am. Compl. at 27), such allegations are insufficient to establish the requisite personal involvement.  *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals").

   In sum, Taylor has not alleged any basis from which it could be inferred that Warden Phillips, Deputy Warden Roberts, HSA Murphy, and Dr. Zarkoski were personally involved in any of the alleged constitutional violations described in Taylor's Amended Complaint.  The Court will therefore dismiss the claims against these Defendants.

## IV.  CONCLUSION

   For the foregoing reasons, the Court will direct service of Taylor's Fourteenth Amendment deliberate indifference claims against Chester County and Prime Care based on their alleged policies pertaining to dental treatment and asthma, as described further above.  *See* Federal Rule of Civil Procedure 4 and 28 U.S.C. § 1915(d).  The remainder of Taylor's claims are dismissed.  Since Taylor was already given an opportunity to amend the defects in his claims, and since his Amended Complaint essentially restated his original claims, the Court concludes that further attempts to amend would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows, which directs service of Taylor's remaining claims.